**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
Attorneys for Plaintiff Class

| | |
|---|---|
| IN THE MATTER OF:<br><br>JOHN IVAN SUTTER, M.D., P.A.,<br>on behalf of himself and all others similarly<br>situated,<br>　　　　　Plaintiffs,<br><br>vs.<br><br>OXFORD HEALTH PLANS, INC.,<br><br>　　　　　Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO. _____<br><br>*Civil Action*<br><br>**VERIFIED COMPLAINT** |

John Ivan Sutter, M.D., a citizen of New Jersey, on behalf of himself and all other similarly situated plaintiffs, by way of verified complaint, says:

1.　　I am the class representative in a class arbitration pending before the American Arbitration Association since December 2002, captioned <u>Sutter, M.D. et al. v. Oxford Health Plans, Inc.</u>, Case No. 18 193 20593 02 (hereinafter the "Sutter Arbitration").

2.　　On March 24, 2005, the Sutter Arbitration was certified as a class action by the arbitrator, William L.D. Barrett (hereinafter the "Class Certification Award," attached hereto as Exhibit "A").　As part of the Class Certification Award, I was appointed the class representative on behalf of a Class of over 20,000 New Jersey physicians that have signed an Oxford New Jersey provider agreement with Oxford Health Plans (NJ), a New Jersey corporation with its principal place of business in New Jersey, during the class period of December 11, 1996 through December 31, 2004 (hereinafter the "Agreement," attached hereto as Exhibit "B").

3.     This certified class arbitration, like other substantially similar certified class actions filed in the Essex County Superior Court, seeks money damages against Oxford arising from defendant's repeated breach of the Agreement by and through it improper, unfair and deceptive claims processing acts and practices.  These practices include Oxford's continuing and systematic: (a) failure to make timely payment of claims in violation of New Jersey's prompt payment laws; (b) refusal to provide compensation for a particular medical procedure by improperly contending that this procedure is routinely included in another procedure performed on the same date of service -- known as "bundling" of claims; (c) unilateral and retroactive reduction of the amount of compensation paid for the services provided by changing the procedure code to a procedure of lesser complexity -- known as "downcoding" of claims; and (d) refusal to recognize and pay the appropriate compensation in cases where additional services are required, known as "modifiers."

4.     On July 20, 2010, Arbitrator Barrett ruled that the Class Certification Award does not include claims arising out of Oxford's blatant violations of the New Jersey prompt payment "waiver" regulation, codified at N.J.A.C. 11:22-1.6(b), as this regulation pertains to "clean" claims for reimbursement submitted by members of the Class during the class period. Arbitrator Barrett made this ruling despite the indisputable fact that this regulation was the law of the State of New Jersey at all relevant times during the class period.  Arbitrator Barrett's July 20, 2010 award was memorialized in American Arbitration Association Procedural Order No. 19 (hereinafter "July 20, 2010 Award," attached hereto as Exhibit "C").

5.     In so ruling, Arbitrator Barrett exceeded his powers and/or manifestly disregarded the law that, pursuant to the Agreement between the parties, indisputably required the arbitrator to apply the law of this State (Exhibit "B" at paragraph 9).

6.     I now bring this Order to Show Cause (Summary Action) for an Order and Judgment requesting vacatur of Arbitrator Barrett's July 20, 2010 Award, directing the arbitrator to allow the Sutter Arbitration Claimant Class to pursue its prompt payment "waiver" regulation claim as to all "clean" claims, and remanding the Sutter Arbitration for further proceedings consistent with this Order and Judgment.

WHEREFORE, John Ivan Sutter, M.D., on behalf of himself and all other similarly situated plaintiffs demands judgment against defendant Oxford Health Plans, Inc. for the following:

A.     Vacating the arbitrator's Procedural Order No. 19, dated July 20, 2010, in the class arbitration of Sutter, M.D., et al. v. Oxford Health Plans, Inc., American Arbitration Association Case No. 18 193 20593 02 (hereinafter "Sutter Arbitration");

B.     Ordering that the "Claim of the Class" as set forth in the arbitrator's Partial Final Class Determination Award of Arbitration, dated March 24, 2005, certifying the Sutter Arbitration as a class arbitration, includes, but is not limited to, claims arising out of Oxford's violations of the New Jersey prompt payment laws including, but not limited to, Oxford's violations of the prompt payment "waiver" regulation, codified at N.J.A.C. 11:22-1.6(b), as this regulation applies to "clean" claims;

C.     Remanding the Sutter Arbitration to the American Arbitration Association for further proceedings consistent with this judgment; and

D.     Granting such other relief as the court deems equitable and just.

## VERIFICATION

STATE OF NEW JERSEY )
                               SS:
COUNTY OF ESSEX    )

John Ivan Sutter, M.D., being duly sworn, deposes and says:

I am the plaintiff in the above-entitled matter. I have read and know the contents of the foregoing Verified Complaint, that the same is true to my knowledge and that as to those matters I believe them to be true.

_____
JOHN IVAN SUTTER, M.D.

Sworn to and subscribed before me on
this _2nd_ day of _September_ 2010

_____
Notary

**LORI A. TREAT**
A Notary Public of New Jersey
My Commission Expires
August 15, 2011

4

## DESIGNATION OF TRIAL COUNSEL

Eric D. Katz, Esq. is hereby designated as trial counsel for the Plaintiff Class in this matter.

BY: _____

ERIC D. KATZ

Dated: September 8, 2010

## CERTIFICATION PURSUANT TO RULE 4:5-1(b) 2

ERIC D. KATZ, of full age, hereby certifies that:

1      I am an attorney at law of the State of New Jersey and a partner with the law firm of Mazie Slater Katz & Freeman, LLC, counsel for the Plaintiff Class in this action.

2.      To the best of my knowledge, the matter in controversy is not the subject of any other action pending in any Court or any pending arbitration proceeding, other than the above-referenced class arbitration before the American Arbitration Association.  In addition, Oxford has filed an appeal of a ruling by the arbitrator on an unrelated issue that is pending in the United States District Court for the District of New Jersey, under Civil Action No. 05-2198.

3.      No other actions or arbitration proceedings are contemplated by the Plaintiff Class against the defendant at this time.

4.      I know of no other parties that should be joined in this action at this time.

5.      There are, however, **related class actions** filed by Dr. Sutter and other class representatives pending in the Essex County Superior Court that involve the same issues, in particular the failure of insurance carriers to adhere to the prompt payment "waiver" regulation

at issue in this Verified Complaint.  These cases are as follows:  <u>Sutter, M.D. v. Horizon Blue Cross Blue Shield</u>, Docket No. ESX- L-3685-02 (pending before Hon. Stephen J. Bernstein, J.S.C. and currently on appeal to the Appellate Division); <u>Kirsch, D.D.S. v. Horizon Blue Cross Blue Shield ("Kirsch I")</u>, Docket No. ESX-L-4216-05 (pending before Hon. Paul J. Vichness, J.S.C.); and <u>Kirsch, D.D.S. v. Horizon Blue Cross Blue Shield ("Kirsch II")</u>, Docket No. ESX-L-109-08 (pending before Hon. Paul J. Vichness, J.S.C.).

6.    It is respectfully requested that the within action be assigned to either Judge Bernstein or Judge Vichness, given their significant involvement and knowledge of the subject claims, including the meaning and application of the New Jersey prompt payment "waiver" regulation, as well as their experience in substantially similar class actions.

I certify that the foregoing statements made by me are true.  I am aware that if the foregoing statements made by me are willfully false, I am subject to punishment.

_____
ERIC D. KATZ

Dated: September 8, 2010

H:\EDK\sutter\Oxford\STATE COURT APPEAL\Verified Complaint 8--10.doc

6

# Exhibit A

# AMERICAN ARBITRATION ASSOCIATION
## Commercial & Class Action Arbitration Tribunal

In the Matter of the Arbitration between

Re: 18 193 20593 02
    John Ivan Sutter, M.D.
    VS
    Oxford Health Plans, Inc.

## PARTIAL FINAL CLASS DETERMINATION AWARD OF ARBITRATOR

**I, THE UNDERSIGNED ARBITRATOR,** having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated October 25, 2002, contained in a Primary Care Physician Agreement (the "Agreement") between Claimant Dr. Sutter and Respondent Oxford Health Plans, Inc. ("Oxford"), and having been duly sworn, and having duly heard the proofs and allegations of the parties, and for the reasons set forth below, do hereby make this PARTIAL/FINAL AWARD pursuant to Rule 5 of the Supplementary Rules for Class Arbitrations of the American Arbitration Association (the "Rules") as follows:

The Proposed Class

Dr. Sutter proposes to define the class in this arbitration as follows:

> All individual physicians and physician groups (including, but not limited to, medical doctors and doctors of osteopathic medicine), regardless of specialty, who provided services to any person who is a subscriber of, or is insured by, Oxford Health Plans, Inc. ("Oxford") in the class period of December 11, 1996 through the present.[1]

Prior Proceedings

Dr. Sutter originally began this case as a part of a larger class action case in the Superior Court of Essex County, New Jersey in April, 2002. Dr. Sutter, a physician, was seeking from Oxford damages and other

---

[1]    Dr. Sutter filed his class-wide arbitration demand on December 11, 2002.  New Jersey's contract statute of limitations is six (6) years.  See N.J.S.A. § 2A:14-1.

Re: 18 193 20593 02
John Ivan Sutter, M.D.
VS
Oxford Health Plans, Inc.

relief arising out of allegations that, under the Agreement, Oxford failed to pay claims and reduced payment on claims as a result of Oxford's improper claims processing tactics.

Oxford moved in the Essex County Superior Court to stay Dr. Sutter's civil class action on the ground that the underlying contract between Dr. Sutter and Oxford required that Dr. Sutter's claims be submitted to arbitration. Oxford was successful in its application to the Court. By order dated October 25, 2002, the Court ordered that Dr. Sutter's Amended Complaint be dismissed and that the matters raised should properly be referred to arbitration in accordance with the Agreement.

Dr. Sutter also applied to the Superior Court for an order certifying the case as a class action and determining the class. This motion was denied by order dated November 21, 2002. The Court ordered that all procedural issues including, but not limited to, the determination of class certification, be resolved by the arbitrator.

By agreement of the parties, this case was stayed until the determination of the United States Supreme Court in *Green Tree Financial Corp. et al. v. Bazzle et al*, which was then pending, could be analyzed.

Thereafter, and before the Rules became effective, the parties briefed and I determined that the arbitration clause in the Agreement allowed for class actions (Memorandum and Order of September 23, 2003, a copy of which is attached to and incorporated into this award as Appendix A).

The parties agreed in 2004 that the Rules would govern the future proceedings in this case, including the class determination matters decided in this award.

After extensive discovery, the class determination issues were briefed and I heard the parties in oral argument at a docketed hearing on October 29, 2004. Based on all of the foregoing, my determination of the class issues is as follows.

2

Re: 18 193 20593 02
   John Ivan Sutter, M.D.
   VS
   Oxford  Health Plans, Inc.

## Discussion

Before dealing with the specific findings required by Rule 4, it is necessary to address two legal issues

raised by Oxford. These are first, whether or not the determination of the United States Court of Appeals

for the 11th Circuit in *Klay et al v. Humana, Inc.*, et al (382 F.3d 1241, 11th Circuit, Fla., 2004, cert. den.

125 S Ct 877, 2005) decided September 1, 2004 determines the outcome of this case. Dr. Sutter brought a

court proceeding, originally filed against Oxford, Horizon Blue Cross Blue Shield of New Jersey, United

Healthcare, HealthNet and CIGNA that was severed as to each defendant, and the actions against United

Healthcare, HealthNet and CIGNA were transferred to the Federal Court for the Southern District of

Florida. There, under a ruling of the Multi-District Panel, all of these similar class actions of physicians

against Health Maintenance Organizations ("HMOs") were being heard. Oxford argues that principles of

collateral estoppel flowing from the *Klay* case bar Dr. Sutter from obtaining class certification in this

arbitration.

**The effect of the *Klay* Decision**

Oxford argues that *Klay* is directly applicable to this case. It says that the purported classes

alleged that defendants, HMOs, agreed to pay physicians under their respective contracts and that the

defendants systematically delayed, denied and diminished the agreed payments. This end was

accomplished by the same general means Dr. Sutter asserts here: automated systems worked down-coding

and grouping or bundling, ignored modifiers that would increase fees payable and processed claims in a

way that resulted in payment times that exceed by many times what was provided by the respective

contracts and applicable state standards.

Even assuming that the legal issues, essentially breach of contract, were common to the purported

classes, the Eleventh Circuit held that class certification of these contract claims was improper and

reversed that part of the decision of the Southern District of Florida.

The *Klay* case is new, carefully reasoned and from a very important court. It requires the

arbitrator to analyze it with the greatest care, as it is a plain determination of law connected to issues to be

3

Re: 18 193 20593 02
    John Ivan Sutter, M.D.
    VS
    Oxford Health Plans, Inc.

decided here. It cannot be disregarded. Mindful of this principle, I have read and re-read the *Klay*

opinion. After careful consideration, I cannot agree with Oxford that it applies to this case as a controlling

precedent.

    The reason is not far to seek. The *Klay* court was confronted with a multi-district consolidation of

hundreds of class actions against as many as seven different HMOs. The opening words of the opinion

speak volumes: "This is a case of almost all doctors vs. almost all major health maintenance

organizations."

    In analyzing the breach of contract claims under state law, the court said "this case involves the

actions of many defendants over a significant period of time and that each defendant throughout this

period utilized many different forms of contracts." It further noted, "this is not a situation in which all

plaintiffs signed the same form contract." It also noted, "another crucial reason why the plaintiffs cannot

establish predominance of class-wide facts on their breach of contract claims is that, although each of the

defendants allegedly breached their contracts in the same general ways, they did so through a variety of

specific means that are not subject to generalized proof for a large number of physicians."

    On the breach of the prompt-pay claims, the Eleventh Circuit said "the most immediate problem

with certifying a nationwide class for this issue is that only 32 states have prompt-pay statutes at all, and

of those, only five states expressly provide a cause of action."

    Dr. Sutter's case seems to me to be on an entirely different footing from the immense problems

faced by the Eleventh Circuit. In this case there is only one state law involved, that of New Jersey. There

is only one HMO involved, Oxford. It is alleged that the contracts the physicians who would make up the

class signed are essentially identical.

    Of significant importance, Dr. Sutter alleges that Oxford systematically processed claims, using

various computer programs, in a way to disadvantage the doctors in breach of their contracts. Dr. Sutter

alleges that Oxford processed these claims as submitted, without requiring other back-up material. The

gist of his claim is that the forms submitted were somehow treated by the system in a way that caused

Re: 18 193 20593 02
    John Ivan Sutter, M.D.
    VS
    Oxford  Health Plans, Inc.

disadvantage to the doctors. This claim would presumably have to be established by expert testimony

about the automated systems Oxford employed.  That it is a difficult problem of proof is apparent. It is

also obvious that it would be virtually impossible for any individual doctor to afford the voluminous

expert testimony that would be required if these cases proceeded individually. The Eleventh Circuit itself

noted in the portion of the *Klay* opinion which affirmed class-action treatment with respect to certain

alleged Federal RICO allegations, that Federal Rule 23 governing class actions has as a dominant idea the

vindication of "the rights of groups of people who individually would be without effective strength to

bring their opponents into court at all." I believe that this factor figures importantly in the current case.

 For these reasons, I find that the *Klay* opinion, despite its erudition, is not applicable to the

specific facts of this case.

 Dr. Sutter argues that whatever *Klay* may mean, this arbitration was brought under and is

governed by the laws of the State of New Jersey. Dr. Sutter argues that New Jersey courts have repeatedly

certified physician class actions involving virtually identical claims to those asserted by Dr. Sutter. He

cites *Zakheim v. Amerihealth* and *Malloy v. Amerihealth* and most importantly, his own case, *Sutter v.*

*Horizon.* (I attach no significance to the Appellate Division's refusal to hear an appeal from the Superior

Court.) These cases plainly show that New Jersey Courts would most probably certify a class in this case.

Oxford's attempt to distinguish the AAA Rules from the New Jersey class action rules is not persuasive.

### Collateral Estoppel

 Even if the *Klay* decision is not controlling precedent here, and as noted above I do not believe

that it is, Oxford asserts that Dr. Sutter cannot have a class action on the breach of contract claims

because his participation in the *Klay* case binds him by collateral estoppel. I disagree.

 Collateral Estoppel is an equitable doctrine that prevents a party from re-litigating in a new forum

and issue that he has litigated unsuccessfully in a previous case or forum. Before it can be successfully

invoked as a defense, it must be shown that Dr. Sutter had a full and fair opportunity to have the question

of his New Jersey contract claims heard and decided.

Re: 18 193 20593 02
    John Ivan Sutter, M.D.
    VS
    Oxford Health Plans, Inc.

Dr. Sutter argues that under New Jersey law, which is applicable to this case, collateral estoppel "should not be rigidly applied if the party sought to be precluded 'did not have an adequate opportunity or incentive to obtain a full and fair adjudication of the initial action.'" Barker v. Brinegar, 346 N.J. Super. 558, 566 (App. Div. 2002) (citing Restatement (Second) of Judgments). "Ultimately, the court must employ a discretionary weighing of economy against fairness." Konieczny v. Micciche, 305 N.J. Super. 375, 385 (App. Div. 1997) (citation omitted). "[C]ollateral estoppel is an equitable doctrine and need not be applied 'if there are sufficient countervailing interests,' or if it would not be fair to do so." Matter of Estate of Dawson, 136 N.J. 1, 23 (1994).

Dr. Sutter's cases were sent to Florida as "tag-along" cases under the Federal Multi-District Rules. I do not think it can be denied that his case was a very small fish in a very large pond. He asserted credibly that his opportunity to influence the arguments of the lead plaintiffs before the 11th Circuit was precisely zero. Under these circumstances, I doubt that the 11th Circuit knew that Dr. Sutter's case even existed. While he may be bound in those specific cases against other HMOs, there has been no showing here that the claims the classes he purported to represent against other HMOs are identical to the claims he asserts against Oxford here.

Since I have some equitable discretion under New Jersey law not to apply collateral estoppel, I think it best to use that discretion to determine that this is not an appropriate case for collateral estoppel.

I have concluded for the foregoing reasons that the *Klay* opinion is not controlling here and that collateral estoppel from *Klay* does not bar Dr. Sutter. I proceed to consider whether or not this case meets the requirements of Rule 4 of the Rules of the American Arbitration Association.

**Commonality**

Re: 18 193 20593 02
John Ivan Sutter, M.D.
VS
Oxford  Health Plans, Inc.

The overarching issue Dr. Sutter presents in this case is whether or not there is something in the various automated systems Oxford employs to process the hundreds of thousands of claims it receives that systematically reduces the payments providers ought to receive.

Oxford argues that when physicians sign up with Oxford, they naturally expect to be paid somewhat less than they would for similar services if they billed patients directly. In return, they are offered a larger pool of patients and accordingly find the arrangement beneficial. This argument misses the point of Dr. Sutter's basic claim. It is not that the payments received are lower on an absolute basis; rather, he says the system produces lower payments because it is cheating him and is designed and/or operated in a dishonest way. This, if true, would constitute a breach of contract.

It is not reasonable to suppose that Oxford's vast system operates solely to cause disadvantage to Dr. Sutter. Nor is it reasonable to suppose that only pediatricians are singled out for the alleged abuse. Accordingly, it seems to me that the basic issue in this case, whether or not the system is honest, is a classic case for class action treatment.

The analysis of the system and its operations is plainly a question for experts, and I expect that expert testimony would constitute the bulk of the proof presented. As noted above, this analysis, because of the size and complexity of the Oxford operation, is bound to be complicated and very expensive. It would be out of the question for Dr. Sutter or any other individual physician to be able to afford experts of the kind and quality that would be able to detect and explain the improper conduct Oxford is allegedly engaging in. These experts would also have to testify in a way that would allow the Claimant to carry the burden of proof on this issue.

This fact alone makes the right of each individual to bring his or her own arbitration essentially valueless, because he or she could not afford to develop the proof that would be needed.

7

Re: 18 193 20593 02
John Ivan Sutter, M.D.
VS
Oxford Health Plans, Inc.

Dr. Sutter has standing to raise the basic question. It follows that the class ought initially to be that of all providers, and not be limited to pediatricians. If at trial, no nefarious scheme is found, then the case will end. If, on the other hand, Dr. Sutter is correct in his assertion, and a scheme is found that disadvantages providers in breach of their contractual expectations, then the issue of sub-classes for additional liability and remedy phases of this case could be considered. That, I think, is a bridge best crossed when and if we come to it, and I am making no determination with respect to sub-classes at this point. This approach is essentially a bifurcation of this case, addressing first the fundamental liability issue.

Because I think that bifurcation is a suitable approach to the obvious complexities of this case, I do not think the result in *Sutter v. Horizon* is controlling here. In that case, the court found that the bundling and down coding claims of the different specialties of providers was too complicated for a class action. I am temporarily avoiding that complexity; when and if we reach it, it may well be that separate arbitrations will have to be considered. However, the members of the class will at least start with the major issue determined, which is bound to simplify and expedite the further proceedings, whatever form they may take. I think that difference is enough to avoid collateral estoppel as well. Moreover, as noted above, I have equitable power not to apply collateral estoppel. Since bifurcation was not apparently an option offered in the *Horizon* case, I think Dr. Sutter should be allowed to proceed.

**Class Certification**

Rule 4(a) provides:

Re: 18 193 20593 02
   John Ivan Sutter, M.D.
   VS
   Oxford  Health Plans, Inc.

> The arbitrator shall consider the criteria enumerated in this Rule 4 and any law or
> agreement of the parties the arbitrator determines applies to the arbitration.  In
> doing so, the arbitrator shall determine whether one or more members of a class
> may act in the arbitration as representative parties on behalf of all members of the
> class described.

Rule 4 specifies the findings I must make, and on the basis of the preceding analysis I do so as follows:

**(1) The class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable;**

It appears that this factor is not seriously disputed. The purported class consists of some 16,000 members. Joining separate arbitrations for each would be far less efficient than deciding the central issues on a class basis.

**(2) There are questions of law or fact common to the class;**

As noted above, the basic factual issue in this case is whether or not Oxford engaged in a scheme to deprive the doctors of what it should have been paying them under their contracts. It seems clear to me that if there was such a scheme, it would have been applied across the board. I am making no determination at this time that there ever was or could have been such a scheme. However, the very complex proof needed to make the factual determination seems to me to be common to all members of the class.

**(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;**

If Oxford indeed had such a scheme, I find that it would be illogical and extremely peculiar if it had chosen to apply it only to pediatricians. Thus, whether or not a scheme existed can be litigated by a pediatrician as well as by a surgeon. How the scheme, if there was one, affected each specialty may differ in kind and amount. That question, if we ever reach it, may require creation of sub-classes. It is premature

Re: 18 193 20593 02
    John Ivan Sutter, M.D.
    VS
    Oxford  Health Plans, Inc.

to attempt to create such classes at this time when it has not been established that Oxford did anything at all that would be actionable.

**·(4) The representative parties fairly and adequately protect the interests of the class;**

**(5) Counsel selected to represent the class will fairly and adequately protect the interests of the class;**

There is no dispute that Dr. Sutter and his counsel are competent to represent the class, as I am now defining it. When and if sub-classes are called for, this matter will be revisited.

**(6) Each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members.**

All the agreements Oxford had with health care providers had arbitration clauses the same as or substantially the same as that found in Dr. Sutter's contract.

However, since May 2003, Oxford has added a provision to the standard arbitration clause specifically excluding the signing physician from class action arbitration. Dr. Sutter argues that the addition to the clause represents a contract of adhesion and is unenforceable.

I think that question is better resolved in the New Jersey courts. On its face, the clause prohibits class arbitration. Whether or not it is unenforceable under New Jersey law seems beyond my powers in making a class determination. Accordingly, I am excluding from the class for this arbitration all those persons whose contracts contain a prohibition on class arbitrations.

The second group is that of physicians with no contract with Oxford, who seek reimbursement when an Oxford insured goes "out of plan." Dr. Sutter notes that the New Jersey Prompt Pay statute contains an arbitration provision, which he argues, ought to allow them to satisfy the requirements of an arbitration clause. Oxford notes, however, correctly in my view, that the statute allows for arbitration only after a step by step dispute resolution process has been followed. I have no power to simply wipe out that

Re: 18 193 20593 02
John Ivan Sutter, M.D.
VS
Oxford  Health Plans, Inc.

process and put those claims directly into arbitration. Accordingly, I am not including those physicians in

the class here certified.

Except for the foregoing, the class proposed by Dr. Sutter meets the requirements of Rule 4(a).

I turn to the additional requirements of Rule 4(b), which provides that if Rule 4(a) has been

satisfied, I must also find:

> **That the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy.**

The Rule instructs me to consider the following matters:

(1) The interest of members of the class in individually controlling the prosecution or defense of separate arbitrations;

The question of whether or not Oxford employed a scheme predominates all others. There would

be no particular reason why any individual would wish to employ experts to examine and testify about

these complex issues, even if it were economically feasible to do so, which as indicated above is plainly

not the case.

(2) The extent and nature of any other proceedings concerning the controversy already commenced by or against members of the class;

The record does not show that there are any other proceedings.

(3) The desirability or undesirability of concentrating the determination of the claims in a single arbitral forum;

It is desirable to have the existence or not of the scheme determined in one forum. If it is found

that such a scheme was practiced, then how it affected various members of the class will have to be dealt

with. If all of these contracts were breached, then a remedy will be found. Procedures could be sub-

classes within this arbitration, separate arbitrations or some combination thereof. I think that

determination of the basic question will be sufficiently difficult that I am not addressing those issues at

Re: 18 193 20593 02
    John Ivan Sutter, M.D.
    VS
    Oxford Health Plans, Inc.

this time. If the Claimant cannot carry the burden of proof that there was a scheme, then these issues may never have to be addressed.

(4) The difficulties likely to be encountered in the management of a class arbitration.

    It would indeed be a naïve arbitrator who did not recognize that, if a scheme is found and sub-classes have to be created, management of this case will be difficult. However, I do not see why the difficulties would be greater than or different from those that have been faced and overcome by the courts in New Jersey in similar cases. Should we reach that point, it may be that separate arbitration cases for each physician would be suitable, once the basic question of the scheme is established. Arbitration is a flexible tool and I am confident that when and if that point is reached, good management will handle the individual claims in a fair and expeditious manner. Since the alternative, denying the class, is essentially to deny these doctors any realistic possibility of redress, I believe that we should go ahead and do the best we can.

    The parties have not shown me how any other device than a class action can deal with the fundamental issue in this case. I find that a class action is the only practical way that justice can be done in this situation.

    Accordingly, I find that the requirements of Rule 4(b) have been satisfied.

    On the basis of the foregoing my award is as follows:

## PARTIAL/FINAL AWARD

### Definition of the Class

    For purposes of all further proceedings in this arbitration the class of Claimants is defined and certified as follows:

> All individual physicians and physician groups (including, but not limited to, medical doctors and doctors of osteopathic medicine), regardless of specialty, who provided medical services to any person who is a subscriber of, or is a member of a health plan administered by Oxford Health Plans, LLC. ("Oxford")

Re: 18 193 20593 02
John Ivan Sutter, M.D.
VS
Oxford Health Plans, Inc.

in the class period of December 11, 1996 through December 31, 2004* and who
have signed with Oxford a New Jersey provider agreement containing an
arbitration clause the same as or similar to that in Dr. Sutter's contract. Excluded
from the class are any individual physicians and physician groups (including,
but not limited to, medical doctors and doctors of osteopathic medicine) who
have executed provider agreements with Oxford that contain a prohibition on
class action arbitrations.

## The Claim of the Class

The Class alleges that:

Oxford has uniformly processed the claims for reimbursement submitted by over 16,500
physicians -- regardless of the specialty of these doctors -- through the use of the same automated
software that arbitrarily delays, denies, impedes and reduces compensation for the medical services these
doctors provide to members of Oxford's insurance plans.

The centerpiece of this case are the common practices carried out by Oxford's computer system
that has been responsible for depriving physicians of proper reimbursement.

This computer system has not processed claims in accordance with the terms of the provider
agreements -- that is, based on the claims information submitted by the physician and his/her applicable
fee reimbursement schedule.

Nor has Oxford's automated, uniform computer programs adjudicated claims in accordance with
the requirements of New Jersey's statutory prompt pay laws.

Rather, Oxford's computer system, inter alia, has re-coded, manipulated, eliminated, bundled and
downcoded claims submitted by physicians and has then processed these claims to achieve one common,
class wide goal -- to save Oxford substantial amounts of money and to pay less to doctors in breach of the
provider agreements and in violation of the prompt pay statutes.

This has been done in an across-the-board fashion, not based upon any individualized review of
claims or medical records for the services provided, but by pre-programmed, arbitrary computer software
that has not been based on standard medical or objective coding practices.

The foregoing has damaged the members of the class in amounts to be determined.

## Class Representative and Counsel

Dr. Sutter and his counsel are found to be adequate representatives of, and capable of protecting,

the interests of the class in this arbitration.

---

* Certification of a class of New Jersey physicians and physician groups who provided medical services through
December 31, 2004, does not prohibit either party from recovering damages for bills submitted for medical services
subsequent to December 31, 2004, as part of the final award in this class arbitration, nor does it prohibit either party
from seeking such damages in another arbitration, subject to the limits imposed by the doctrines of res judicata and
collateral estoppel.

13

Re: 18 193 20593 02
John Ivan Sutter, M.D.
VS
Oxford Health Plans, Inc.

**Bifurcation for Further Proceedings**

When and if it is determined that Oxford breached its agreements with the members of the class, the issue of sub-classes and suitable further proceedings will be considered, and no determination with respect to those matters is being made in this award.

**Notice**

Notice of this arbitration and the method for opting out of the arbitration shall be given to all members of the class in the Form of Notice attached to and made a part of this Award as Appendix B.

**Stay**

As required by the Rules, all proceedings in this arbitration are stayed for thirty days from the date of this award. If the parties proceed to the courts, this stay can be extended as appropriate, either by me or by the courts.

03/24/05
_____
Date

_____
William L.D. Barrett

I, William L.D. Barrett do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

3/24/05
_____
Date

_____
William L.D. Barrett

State of New York
County of New York

On this day, the above arbitrator came and appeared before me and confirmed to me that he is the individual described herein and acknowledged to me that he/she is the individual who executed the foregoing instrument.

_____
Notary Public

DEBORAH A. REAGAN
Notary Public, State of New York
No. 01RE6095376
Qualified in Westchester County
Commission Expires July 7, 2007

14

Re: 18 193 20593 02
    John Ivan Sutter, M.D.
    VS
    Oxford Health Plans, Inc.

## APPENDIX A

## AMERICAN ARBITRATION ASSOCIATION

------------------------------------

**John Ivan Sutter, M.D.,**
**on behalf of himself and**
**all others similarly situated,**

**Claimant**

**v.**

                                **Case No.**
                                **18 193 20593 02**

**Oxford Health Plans, Inc.,**

**Respondent**

------------------------------------

## MEMORANDUM AND ORDER

      Dr. Sutter asserts that this case can be maintained as a class action. Oxford seeks by motion to have the case declared not a class action.

### Prior Proceedings

      Dr. Sutter originally began this case as a part of a larger class action case in the Superior Court of Essex County, New Jersey in April 2002. Dr. Sutter, a physician, was seeking from Oxford damages and other relief arising out of allegations that, under a Primary Care Physician Agreement between Dr. Sutter and Oxford (the "Agreement"), Oxford failed to pay claims and reduced payment on claims as a result of Oxford's improper claims processing tactics.

      Oxford moved in the Essex County Superior Court to stay Dr. Sutter's civil class action on the ground that the underlying contract between Dr. Sutter and Oxford required that Dr. Sutter's claims be submitted to arbitration. Oxford was successful in its application to the Court. By order dated October 25, 2002, the Court ordered that Dr. Sutter's Amended Complaint be dismissed and that the matters raised should properly be referred to arbitration in accordance with the Agreement.

Re: 18 193 20593 02
John Ivan Sutter, M.D.
VS
Oxford Health Plans, Inc.

Thereafter, Dr. Sutter applied to the Superior Court for an order certifying the case as a class
action and determining the class. This motion was denied by order dated November 21, 2002. The Court
ordered that all procedural issues including, but not limited to, the determination of class certification, be
resolved by the arbitrator.

In March, 2003, having been appointed arbitrator in this case, I conferred with the parties about
how to proceed.

It was noted at that time that the Supreme Court of the United States had granted certiorari in a
case called *Green Tree Financial Corp. et al. v. Bazzle et al.* (Docket No. 02-634). That case involved
issues that might control the determination of the class action issues in this arbitration. Oral argument in
that case had been scheduled for April 23, 2003 and a decision by the Supreme Court was expected before
early July. It appeared sensible to take no action on the class action issues in this arbitration until the
determination of the *Green Tree* case had been received and analyzed. Accordingly, in Procedural Order
No. 1, all proceedings in this arbitration were stayed until further order of the arbitrator.

On June 23, 2003 the Supreme Court rendered a decision in the *Green Tree* case. Pursuant to the
agreement of the parties, each provided me with a letter outlining their respective views about the
meaning of the *Green Tree* case for this arbitration. At a conference with the parties it was agreed that
under the *Green Tree* case, I must determine whether the parties' Agreement allows for class action
arbitration. As outlined in procedural Order No. 2, Oxford moved for a determination that this arbitration
cannot be maintained as a class action. The parties provided extensive briefs on this issue. The motion is
determined as provided in this memorandum and order.

### Discussion

It is axiomatic that questions of Arbitrability begin with an analysis of the parties' agreement.
This is particularly true since the *Green Tree* case. It was widely supposed that the Supreme Court would
rule, as some lower Federal Courts had, that the Federal Arbitration Act does not allow class actions in
arbitration unless the parties have specifically agreed to class action arbitration. It can be noted that

16

Re: 18 193 20593 02
    John Ivan Sutter, M.D.
    VS
    Oxford  Health Plans, Inc.

neither in the _Green Tree_ case nor in this case does the arbitration clause contain any such express

mention of class action arbitrations.

      While commentators will no doubt spend much ink and learning on the several opinions the

divided Supreme Court issued, one thing seems clear to me at least: a blanket prohibition on arbitration

class actions without specific authorization in the arbitration clause was firmly rejected. The argument to

that effect by the Petitioner and the _amici_ persuaded only three Justices. It can be argued that all of the

remaining six, explicitly or implicitly, believed that class action arbitration without specific authorization

is not impossible, but is rather a question of construction of the parties' agreement. In any event, whatever

else _Green Tree_ stands for, it means that whether a class action in arbitration is possible turns on the

interpretation of the parties' agreement and that such interpretation is to be made by the arbitrator. I

therefore commence analysis of this case with the premise that a class action arbitration is a possible

outcome and that it is for me, as arbitrator, to make that determination.

      I further note that in this case the prior determination of the Superior Court of Essex County

admits the possibility that class action arbitration is available in this case. It could be argued that under

the _Green Tree_ case, the Court did exactly the right thing, that is it sent the case to arbitration with the

specific statement that "all procedural issues including, but not limited to, the determination of class

certification, shall be resolved by the arbitrator." The Court may have thought that it had already

determined that a class action was available, with only the procedural issues, such as determination of the

actual class, left for the arbitrator. The parties in this case have agreed that I should proceed to make the

determination, which I do in this memorandum, _de novo_.

**The Arbitration Clause**

      To begin the analysis at the beginning, we turn first to the arbitration clause in the Agreement. It

provides in part:

        No civil action concerning any dispute arising under this agreement shall be

        instituted before any court, and all such disputes shall be submitted to final and

Re: 18 193 20593 02
John Ivan Sutter, M.D.
VS
Oxford Health Plans, Inc.

binding arbitration in New Jersey, pursuant to the Rules of the American

Arbitration Association with one arbitrator.

This clause is much broader even than the usual broad arbitration clause. The introductory phrase,

"No civil action concerning any dispute arising under this agreement shall be instituted before any court,"

is unique in my experience and seems to be drafted to be as broad as can be. "No civil action" must mean

no civil action of any kind whatsoever. The clause prohibits civil actions in law, equity, admiralty or even

probate. No such action shall be instituted in "any court." Any court includes any Federal or State Court,

any foreign court or the Court at the Hague. Taken together, this phrase has the effect of prohibiting any

conceivable court action concerning any dispute under the Agreement. It would not be possible to draft a

broader or more encompassing clause.

Having prohibited all conceivably possible civil actions, the clause takes this universal and

unlimited class of prohibited civil actions and says, "and all such disputes shall be submitted to final and

binding arbitration . . ."

This means that the clause sends to arbitration "all such disputes," which, apart from the

prohibition, could have been brought in the form of any conceivable civil action. Since there can be no

dispute in any court without a civil action of some sort, the disputes that the clause sends to arbitration are

the same universal class of disputes the clause prohibits as civil actions before any court. It follows that

the intent of the clause, read as a whole, is to vest in the arbitration process everything that is prohibited

from the court process.

A class action is plainly one of the possible forms of civil action that could be brought in a court

concerning a dispute arising under this Agreement. In fact, a class action in court is just what Dr. Sutter

commenced in the first place.

Therefore, because all that is prohibited by the first part of the clause is vested in arbitration by its

second part, I find that the arbitration clause must have been intended to authorize class actions in

arbitration. Indeed, to avoid a finding that such was the parties' intention, it would be necessary for there

Re: 18 193 20593 02
   John Ivan Sutter, M.D.
   VS
   Oxford Health Plans, Inc.

to be an express exception for class actions in the prohibition. Such a carve-out cannot be inferred absent

some clear manifestation of such intent. Similarly, that class actions in court are absolutely prohibited by

the first part of the clause but are at the same time not allowed under the second part would mean that

class actions are not possible in any forum. In my view, that reading cannot be inferred in the absence of a

clear expression that such a bizarre result was intended.

Accordingly, I find that, on its face, the arbitration clause in the Agreement expresses the parties'

intent that class action arbitration can be maintained.

In addition, I note that, since Oxford successfully invoked the arbitration clause to prohibit a class

action in court, it ought to be bound by judicial estoppel from arguing in this arbitration that the class

action part of the case is not governed by the "and all such disputes [including the class action it has just

successfully had stopped] shall be submitted to final and binding arbitration" clause.

Since I do not find that the clause is ambiguous, it is not necessary to pass on the *contra*

*proferrentem* arguments.

### The Agreement as a Whole

It remains to discuss Oxford's arguments that the agreement read as a whole limits the possible

interpretation of the arbitration clause to eliminate class actions. While Oxford notes correctly that the

Agreement must be viewed as a whole, I do not find persuasive its contentions that other provisions of the

Agreement undermine what appears to be facially allowed by the arbitration clause.

Oxford notes, for example, that the parties to the agreement are only Dr. Sutter and Oxford. The

contract repeatedly refers to those parties as Oxford, on the one hand, and the "Primary Care Physician,"

"his/her" or "he/she" on the other hand. Paragraph after paragraph, Oxford notes, the contract defines the

duties and obligations of each party, without a single reference to any other physician or health care

provider.

This argument is not persuasive. Every contract, except one that expressly refers to class

arbitration, will necessarily deal only with the parties to the particular contract. It can be noted that similar

19

Re: 18 193 20593 02
    John Ivan Sutter, M.D.
    VS
    Oxford Health Plans, Inc.

language in the contracts in the *Green Tree* case did not cause any of the lower courts, or the Supreme

Court, to conclude as a matter of law that the parties thereby intended to preclude class arbitration.

Indeed, the whole argument seems to me to be beside the point. In a class arbitration, the members of the

class are not necessarily parties to the same contract; rather, they have similar or identical contracts with

the same defendant that raise the same or similar issues. The references in the Agreement to individual

parties, accordingly, have no bearing on whether this Agreement allows class arbitrations.

### The ADR Clause in the Agreement

The Agreement contains, in addition to the arbitration clause discussed above, an ADR clause

that allows for adjustment of certain disputes within a procedure maintained internally by Oxford. Oxford

also argues that the ADR clause requires that, before Dr. Sutter may pursue arbitration, he must attempt to

resolve his dispute through this ADR process.

Oxford notes that the ADR procedure is mandated by New Jersey law to provide a mechanism for

providers to resolve

disputes on payment of claims arising from individual contracts. In 2001, Oxford updated its Provider

Reference Manual to provide the mandated ADR process for the reviews and appeals set forth in these

regulations.

Oxford argues that to allow class arbitration to dispense with this individual internal dispute

resolution mechanism would subvert the entire statutory scheme. Interpreting the contract to provide for

"class arbitration," Oxford argues, would be fundamentally inconsistent with New Jersey law and

regulations.

Finally Oxford argues that the explicit terms of the contract permit arbitration only for physicians

who have exhausted their disputes through this ADR grievance procedure. This language alone, it argues,

precludes "class arbitration" on behalf of all New Jersey Oxford-affiliated physicians, many thousands of

whom have never asserted a grievance, let alone exhausted this contractually mandated procedure.

Re: 18 193 20593 02
   John Ivan Sutter, M.D.
   VS
   Oxford Health Plans, Inc.

I do not accept Oxford's arguments. With respect to the situation of Dr. Sutter himself, the parties' failure to raise this issue throughout the court proceedings prior to this arbitration indicates that they interpret the ADR clause as not being a condition precedent. Moreover, their failure to raise it as a bar it seems to me to amount to a waiver.

I interpret the reference at the end of the ADR clause that "Any complaint or grievance which at the end of [the ADR] process is not resolved . . . may be submitted to arbitration pursuant to [the arbitration clause] to mean just what it says. The ADR process is non-binding; it may or may not result in a resolution of a dispute. If it does not, the provider is free to pursue arbitration. I thus interpret the ADR procedure as an alternative, that the provider can pursue if he chooses, and his use of the ADR procedure does not preclude arbitration if he does not like the ADR result. It is not meant to be a condition precedent to arbitration. Similarly, the ADR clause is found at the end of the Agreement, unattached to the arbitration clause. Contracts that mandate ADR before arbitration typically structure the progression from negotiation to mediation to arbitration in a single clause.

Dr. Sutter's brief refers to the extensive discussion of the same ADR clause by the New Jersey court in connection with a class action against another insurer. Oxford notes correctly that that agreement in that case does not involve arbitration. Nevertheless, the court's analysis of the purpose and application of the ADR clause is consistent with the reading adopted here that this clause is essentially for the benefit of the provider and is not to be used as a condition precedent.

Accordingly, I find that the ADR clause has no current application to Dr. Sutter. As to other members of the class or classes the bearing the ADR clause may have will be one of the issues in administration of the class action. I am making no finding about the same at this point. That issue, as all others relating to the actual class action, are reserved to be decided in further appropriate proceedings.

Re: 18 193 20593 02
 John Ivan Sutter, M.D.
 VS
 Oxford  Health Plans, Inc.

### Rules of the AAA

Finally, Oxford says that the reference in the arbitration clause to the rules of the American Arbitration Association negate class actions. I disagree. The current AAA rules are silent on the question of class actions. The procedures on

consolidation address issues different from those presented by class actions. Consolidations are imposed, by courts, and under special AAA procedures, for reasons unique to each case. These can include efficiency and the avoidance of inconsistent results. While consolidations are imposed, a class action always provides the class members the opportunity to opt out of the proceedings. I therefore conclude that the reference to AAA procedures in the Agreement is not inconsistent with maintaining this case as a class action.

### Conclusion

For the foregoing reasons this case shall be maintained as a class action.

This determination does not in any way decide any of the issues relating to the class action itself, such as the definition of the class or classes, the form of notice to class members and similar matters. Nor does it reflect any views on the merits of the underlying case. It was originally agreed with the parties that consideration of all such matters would be deferred until it was first concluded that this case would or would not be maintained as a class action.

A status conference will be scheduled promptly to address what further proceedings will be required.

It is so ordered.

/s/ W.L.D. Barrett

September 23, 2003

_____

W.L.D. Barrett, Arbitrator

Re: 18 193 20593 02
    John Ivan Sutter, M.D.
    VS
    Oxford Health Plans, Inc.


## APPENDIX B


## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| JOHN IVAN SUTTER, M.D., P.A., on behalf of himself and all others similarly situated, | : |
| Claimant, | :    AAA CASE NO.  18 193 20593 02 |
| vs. | :    <u>NOTICE OF CLASS DETERMINATION</u> |
| OXFORD HEALTH PLANS, INC. | : |
| Respondent. | : |


<u>This Notice May Affect Your Rights.</u>

<u>Please Read Carefully.</u>


**IF YOU ARE A PHYSICIAN OR PHYSICIAN GROUP WHO PROVIDED MEDICAL SERVICES TO ANY PERSON WHO IS A MEMBER OF A HEALTH PLAN ADMINISTERED BY OXFORD HEALTH PLANS LLC ("OXFORD") SINCE DECEMBER 11, 1996 AND YOU SIGNED A NEW JERSEY PARTICIPATING PROVIDER AGREEMENT WITH OXFORD CONTAINING AN ARBITRATION CLAUSE THAT DOES NOT PROHIBIT YOU FROM PARTICIPATING IN A CLASS ARBITRATION, PLEASE READ THIS NOTICE CAREFULLY.  THIS CLASS ARBITRATION MAY AFFECT YOUR RIGHTS.**

## I.    <u>WHY SHOULD YOU READ THIS NOTICE?</u>

Your rights may be affected by the class action arbitration known as <u>Sutter v. Oxford Health Plans, Inc.</u>, Case No. 18 193 20593 02, now pending before the American Arbitration Association, referred to in this Notice as the "Class Arbitration." This Notice is to inform you of the arbitrator's decision to certify the arbitration as a class action, provide details on the nature of the claims asserted

Re: 18 193 20593 02
   John Ivan Sutter, M.D.
   VS
   Oxford Health Plans, Inc.

against Oxford,[2] and advise you of your right to participate in or exclude yourself from the Class

Arbitration.

## II.    THE NATURE OF THE ACTION

   This arbitration was originally filed by a physician, John Ivan Sutter, M.D., P.A.  Dr. Sutter is a

pediatrician practicing medicine in Clifton, New Jersey.  Dr. Sutter, on behalf of himself, and on behalf of

all New Jersey individual physicians and physician groups who executed contracts with Oxford filed this

Class Arbitration against Oxford asserting, among other causes of action, breach of contract and statutory

violations of the New Jersey Prompt Payment Act and the HINT Act alleging Oxford's failure to timely

and appropriately pay physicians for the medical services they rendered to Oxford plan members and

insureds.  More specifically, Dr. Sutter seeks damages, on behalf of himself, and on behalf of physician

providers, claiming that, among other things, Oxford continuously and systematically:  (1) fails to make

prompt and timely payment of medical claims; (2) refuses to provide compensation for a particular

medical procedure by improperly contending that this procedure is routinely included in another

procedure performed on the same date of service -- known as "bundling" of claims; (3) unilaterally and

retroactively reduces the amount of compensation paid for the medical services provided by changing the

procedure code (CPT Code) to a procedure of lesser complexity -- known as "downcoding" of claims; and

(4) refuses to pay the appropriate compensation in cases where additional medical services were required

to treat more complex medical conditions or separate and unrelated conditions -- known as the refusal to

recognize "modifiers."

   Oxford denies Dr. Sutter's allegations, and contends that it has appropriately processed and

reimbursed the claims of its member physicians as required under the terms and conditions of its contracts

with physicians.  Oxford further contends that it has overpaid certain physicians, and may pursue such

overpayments as defenses, offsets and/or counterclaims in this Class Arbitration.

---

[2]    When the term "Oxford" is used herein, it shall mean Oxford Health Plans LLC, and all of the health plans
it administers.  "Oxford" does not include, and this notice does not relate to, UnitedHealth Group or any of the
health plans it or its affiliates or subsidiaries administer, except for Oxford Health Plans LLC and health plans that
entity administers.

Re: 18 193 20593 02
John Ivan Sutter, M.D.
VS
Oxford Health Plans, Inc.

A contested class certification hearing was held on October 29, 2004. Thereafter, the arbitrator

certified a class of certain New Jersey individual physicians and physician groups who participate in the

Oxford provider network and who rendered services to Oxford members and insureds, and appointed Dr.

Sutter to represent the class, of which you may be a member.

## III.   WHAT RELIEF DOES THE CLASS SEEK?

Dr. Sutter is seeking compensatory damages and punitive damages on behalf of himself and other

members of the class for medical services rendered (and supplies provided) which Dr. Sutter asserts that

Oxford failed to pay timely or appropriately as a result of improper claims processing practices. Oxford

denies Dr. Sutter's allegations and contends that its practices are fully consistent with the terms of the

applicable provider agreements.

The arbitrator's class certification Order does not decide the merits of the claims of the class or

Oxford's defenses, but rather only certifies this arbitration as a Class Arbitration. The arbitrator has not

ruled on the merits of the claims asserted by the class or the denials and other defenses asserted by

Oxford.

THERE IS NO ASSURANCE THAT AN AWARD WILL BE GRANTED TO DR.

SUTTER AND THE CLASS OR, IF AN AWARD IS MADE, THAT IT WILL BE COLLECTED

IN WHOLE OR IN PART.

## IV.   AM I AFFECTED BY THIS CLASS ARBITRATION?

You are a member of the Class certified by the arbitrator if you were or are:

> An individual physician or physician group (including, but not limited to, a
> medical doctor or doctor of osteopathic medicine), regardless of specialty, who
> provided medical services to any person who is a member of a health plan
> administered by Oxford Health Plans LLC ("Oxford") in the class period of
> December 11, 1996 through December 31, 2004, and who signed with Oxford a
> New Jersey provider agreement containing an arbitration clause the same as or
> similar to that in a New Jersey participating provider agreement (providing that
> no civil action concerning any dispute arising under the agreement shall be
> instituted before any court, and all such disputes shall be submitted to final and
> binding arbitration in New Jersey, pursuant to the rules of the American
> Arbitration Association with one arbitrator) and which does not prohibit you
> from participating in a class arbitration.

Re: 18 193 20593 02
    John Ivan Sutter, M.D.
    VS
    Oxford Health Plans, Inc.

## V.   THE ARBITRATOR, CLASS REPRESENTATIVE AND CLASS COUNSEL

The Arbitrator in this arbitration is **William L. D. Barrett, Esq.** Mr. Barrett graduated with a Bachelor's degree from Yale University in 1960, received his law degree from Harvard University in 1963, and has been a practicing lawyer since 1964. Mr. Barrett is currently a member of the law firm of Hollyer Brady Barrett & Hines LLP in New York, New York.

The Arbitrator appointed **John Ivan Sutter, M.D.** to act on behalf of the class. Dr. Sutter graduated with a Bachelor's degree from New York University in 1974, obtained his medical degree from Far Eastern University in 1978, and has been practicing medicine since 1979. Dr. Sutter is a board-certified pediatrician and maintains his medical practice in Clifton, New Jersey.

The Arbitrator also appointed Class Counsel to represent the interests of the class. The names of the attorneys and the firm designated to represent the Class are: **Eric D. Katz, Esq.** and **David A. Mazie, Esq.**, partners of the law firm of Nagel Rice & Mazie, LLP in Roseland, New Jersey. Mr. Katz received a Bachelor's degree from Polytechnic University in 1988 and a law degree in 1991 from Pace University, and has been practicing law since 1991; Mr. Mazie received a Bachelor's degree from Rutgers University in 1983 and a law degree from George Washington University in 1986, and has been practicing law since 1986. The Arbitrator determined that Class Counsel is experienced and could adequately represent Dr. Sutter and the class. If you have any questions regarding the type of litigation in which Class Counsel is involved, you may contact Class Counsel at the address and e-mail address listed below. You will not be charged for Class Counsel's services. Rather, if Class Counsel obtains a recovery for the Class, Class Counsel will apply to the arbitrator for payment of reasonable attorney's fees and costs to be deducted from the funds recovered before the net proceeds are distributed to Class members.

You have the right to hire your own attorney and enter an appearance through counsel if you so desire. If you do so, you will be responsible for paying the attorney's fee. You have the right not to participate, or to exclude yourself ("opt-out") from the Class. The procedures and deadlines for

Re: 18 193 20593 02
John Ivan Sutter, M.D.
VS
Oxford  Health Plans, Inc.

excluding yourself from the Class are described in the next section of this Notice. You also have the right to seek the arbitrator's permission to intervene or appear in this Class Arbitration.

## VI.    DO I NEED TO DO ANYTHING NOW?

**TO REMAIN IN THE CLASS:** If you want to remain a member of the Class, YOU DO NOT HAVE TO DO ANYTHING AT THIS TIME. If Dr. Sutter is successful after an arbitration hearing on the merits or obtains a settlement, you may then be able to participate in any recovery obtained for the Class through additional proceedings or through a process to be administered by the arbitrator. If you remain part of the Class, you will be notified if there is any recovery and/or any procedures through which you may be required to participate to seek a recovery. *As a Class member, you will be bound by all Orders of the arbitrator, including Orders which may be adverse to the class. Furthermore, as a Class member, any currently existing claims or causes of action as alleged in this Class Arbitration will be forever resolved by a final judgment in this case.*

Participating in this Class Arbitration will not terminate or affect any of your participating provider agreements with Oxford.

**EXCLUDING YOURSELF FROM THE CLASS:** If you want to be excluded from this Class, the Arbitrator will exclude you. To request exclusion, you must send a letter expressly stating that you wish to be excluded from the Class. This letter must be sent to the address listed below, and must be postmarked no later than _____:

[RECIPIENT/ADDRESS TO BE AGREED UPON BY THE PARTIES]

If you choose to exclude yourself from the Class, you will not be allowed to participate in any recovery that might be paid as a result of a hearing or settlement of this Class Arbitration. You will not be bound by any decision in this Class Arbitration favorable to Oxford; and you may present any claims you have against Oxford by filing your own arbitration, or you may seek to intervene in this Class Arbitration. Should you exclude yourself from the Class, you will not be bound by any of the Orders of the arbitrator.

Re: 18 193 20593 02
John Ivan Sutter, M.D.
VS
Oxford Health Plans, Inc.

## VII.    FURTHER PROCEEDINGS

As noted, Oxford denies the allegations and claims made by Dr. Sutter. The next stage of the

arbitration will include discovery and other pre-hearing proceedings; an arbitration hearing of this matter

has not yet been scheduled. Any class member may attend hearings in this Class Arbitration. You may

communicate with Class Counsel if you have evidence you believe would be helpful to establish the Class

claims, and you may be asked by the parties to provide information relevant to the arbitration. Any

information or evidence you provide to Class Counsel may be subject to discovery by Oxford.

## VIII.    WHO CAN I CONTACT WITH QUESTIONS?

**PLEASE DO NOT CALL THE AMERICAN ARBITRATION ASSOCIATION OR THE**

**ARBITRATOR.** If you have questions regarding this Notice or the Class Arbitration to which it refers,

you can obtain information in one of two ways.

First, you may contact Class Counsel by written correspondence. To do so, you may send a letter

to **Eric D. Katz at Nagel Rice & Mazie, LLP, 103 Eisenhower Parkway, Roseland, New Jersey**

**07068, or send an e-mail to ekatz@nrmlaw.com.**

Second, you may obtain information from the Class Arbitration Docket available on the

American Arbitration Association's Web site (www.adr.org).

# Exhibit B

## OXFORD HEALTH PLANS (NJ), INC.

### PRIMARY CARE PHYSICIAN AGREEMENT

### SIGNATURE PAGE

IN WITNESS WHEREOF, Primary Care Physician and Oxford Health Plans (NJ), Inc. have executed this PRIMARY CARE PHYSICIAN AGREEMENT as set forth below. This PRIMARY CARE PHYSICIAN AGREEMENT shall be effective on the date it is signed by both parties hereto contingent only upon Primary Care Physician being successfully credentialed by Oxford.

| Line of Business | For Oxford Use Only | |
|---|---|---|
| Primary Care Physician elects to participate in Oxford's Commercial managed care plans, as shown below. | | |
| ☑ Commercial/ Freedom Network at the rates shown in Attachment A-1. | ☐ Yes | ☐ No |
| ☑ Commercial/ Liberty Network at the rates shown in Attachment A-2. | ☐ Yes | ☐ No |
| ☐ Primary Care Physician elects to participate in Oxford's Medicare program at the rates shown in Attachment A-3. | ☐ Yes | ☐ No |

PRIMARY CARE PHYSICIAN            OXFORD HEALTH PLANS (NJ), INC.

Signed: _____            Signed: _____

Print Name: _John Ivan Sutter_  Print Name:   **Judy Roman**
                                                                **Regional Vice President**
                                          Title: _____  **Medical Delivery Systems**

Date: _9/14/98_                          Date: _9/30/98_

For administrative ease and efficiency, Oxford has placed the Signature Page of this PRIMARY CARE PHYSICIAN AGREEMENT at the front rather than at the back page of this document.

OXFORD HEALTH PLANS (NJ), INC.

## PRIMARY CARE PHYSICIAN AGREEMENT

This agreement ("Agreement") sets forth the terms whereby Primary Care Physician will treat members of Oxford's medical plans ("Members").

1. Health Services. Primary Care Physician agrees to provide to Oxford Members ("Members") who select Primary Care Physician all medically necessary primary care health services which Members are entitled to receive under their Oxford Certificate of Coverage or Member Handbook ("Covered Services"), which Primary Care Physician is qualified to provide. Primary Care Physician shall have the primary responsibility for providing and coordinating the overall health care of each of his/her Members, including appropriate referrals to Consultant Physicians, Hospitals and other providers in Oxford's network. Primary Care Physician agrees to comply with all Oxford's credentialing/recredentialing, administrative, patient referral, utilization review, quality assurance and reimbursement procedures as may be adopted by Oxford from time to time. Primary Care Physician shall make arrangements to assure the availability of coverage for physician services to his/her Members on a 24 hours per day, 7 days per week basis. Primary Care Physician agrees not to differentiate or discriminate in the treatment of his/her patients on the basis of race, sex, age, religion, place of residence, health status or source of payment, including Medicare and Medicaid, and to observe, protect and promote the rights of Members as patients.

2. Reimbursement Rates. Oxford shall pay Primary Care Physician' Approved Charges for medically necessary Covered Services provided to Members, as set forth in Attachment A hereto. Oxford and Primary Care Physician agree that the purpose of the compensation arrangement is to control the cost of health services, including hospitalization, and to ensure the appropriate level of utilization while maintaining quality of care.

3. Payment/Hold Harmless. Primary Care Physician shall bill Oxford for reimbursement. Billings shall be in form and detail acceptable to Oxford. Primary Care Physician's compensation from Oxford for the medically necessary Covered Services provided to Members, shall be as set forth in Attachment A hereto. Primary Care Physician agrees to seek payment for Covered Services only from Oxford and in no event, including but not limited to nonpayment by Oxford, insolvency of Oxford or breach of this Agreement, shall Primary Care Physician bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against a Member, a Member's family or persons (other than Oxford) acting on his/her behalf for services provided pursuant to this Agreement. This provision does not prohibit Primary Care Physician from collecting applicable deductibles in point-of-service plans, copayments or fees for uncovered services delivered on a fee-for-service basis to

Members. Oxford shall make payment in full to Primary Care Physician for "clean" claims within 60 days of receipt by Oxford.

4. Referrals. Except in cases of a true medical emergency, Primary Care Physician shall only refer Members to Consultant Physicians, Hospitals and other providers in Oxford's network in accordance with Oxford referral procedures. Primary Care Physician must notify Oxford at least 14 days in advance of elective hospitalizations of Members.

5. Medical Records. Primary Care Physician and Oxford agree that all Members' medical records shall be treated as confidential so as to comply with all state and federal laws regarding the confidentiality of patient records. To the extent permitted by law, Oxford shall have the right to inspect at all reasonable times any accounting, administrative or medical records maintained by Primary Care Physician pertaining to Oxford, to Members or to Primary Care Physician's participation hereunder. In addition, Primary Care Physician agrees that he/she shall provide access to all medical records of Members to appropriate personnel including furnishing copies of such records in a timely basis (within 10 days of Oxford's request), and to appropriate personnel of the State Departments of Health and Senior Services, and/or Insurance and Banking in compliance with all applicable statutes and regulations.

6. Quality Assurance and Utilization Review. Primary Care Physician agrees to cooperate with and to participate in such peer review programs, including utilization review and quality assurance programs, precertification, external audit systems, and administrative and grievance procedures, and all other policies as are established by Oxford. Primary Care Physician agrees to comply with all final determinations rendered by Oxford's quality assurance programs, peer review programs or grievance procedures. Primary Care Physician agrees that all services performed for Members shall be consistent with the proper practice of medicine, and that such services shall be performed in accordance with the customary rules of ethics and conduct of the American Medical Association and such other bodies, formal or informal, governmental or otherwise, from which physicians seek advice and guidance or to which they are subject to licensing and control. Primary Care Physician shall immediately notify Oxford if any medical license, board certification or hospital admitting privileges applicable to Primary Care Physician is ever revoked or restricted in any manner.

7. Admitting Privileges/Board Certification/Controlled Substance Certification. Primary Care Physician shall obtain as soon as possible and maintain at all times admitting privileges at one or more Hospital's in Oxford's network. Primary Care Physician shall be Board Certified or have within the last five years become Board Eligible in his/her specialty or a functionally equivalent status acceptable to Oxford and shall maintain at all times his/her licensure and controlled substance certification with the Drug Enforcement Administration in compliance with all applicable statutes and regulations.

8. <u>Insurance</u>. Primary Care Physician shall provide and maintain such policies of general and professional liability (malpractice) insurance as shall be necessary to insure Primary Care Physician and his/her employees against any claim or claims for damages arising by reason of personal injuries or death occasioned, directly or indirectly, in connection with the performance of any service by Primary Care Physician. The amount and extent of such insurance coverage shall be subject to the approval of Oxford, and shall not be less than $1,000,000 per claim and $3,000,000 per year.

9. <u>Interpretation</u>. This Agreement shall be governed in all respects by New Jersey law. Oxford may modify any provision of this Agreement upon written notice to Primary Care Physician. Oxford may assign this Agreement, in whole or in part, without notice. The invalidity or unenforceability of any term or condition of this Agreement shall not affect the validity or enforceability of any other term or provision. The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as or be construed to be a waiver of any subsequent breach hereof. All material changes to this agreement must receive prior approval from the New Jersey Departments of Health and Senior Services and Banking and Insurance, and, with regard to the Hold Harmless and the Post-Termination provisions, must receive the additional prior approval of the Health Care Financing Administration.

10. <u>Relationship of Parties</u>. No provision of this Agreement is intended to create nor shall be deemed or construed to create any relationship between the parties hereto other than that of independent entities contracting with each other hereunder solely for the purpose of effecting the provisions of this Agreement. Neither of the parties hereto, nor any of their respective employees, shall be construed to be the agent, employee or representative of the other, nor does either party have an express or implied right or authority to assume or create any obligation or responsibility on behalf of or in the name of the other party. Neither Primary Care Physician nor Oxford shall be liable to any other party for any act, or any failure to act, of the other party to this Agreement. Notwithstanding the foregoing, Primary Care Physician shall have the authority by this Agreement to render medical services to Members on behalf of Oxford.

11. <u>Arbitration</u>. No civil action concerning any dispute arising under this Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration in New Jersey, pursuant to the rules of the American Arbitration Association with one arbitrator. All costs and expenses of the arbitration, including actual attorney's fees, shall be allocated among the parties to this Agreement according to the arbitrator's discretion. The arbitrator's award may be confirmed and entered as a final judgment in any court of competent jurisdiction and enforced accordingly. Proceeding to arbitration and obtaining an award thereunder shall be a condition precedent to the bringing or maintaining of any action in any court with respect to any dispute arising under this Agreement, except for the institution of a civil action to maintain the status quo during the pendency of any arbitration proceeding.

12. Term and Termination. The initial term of this Agreement shall be for one year, commencing on the date it is countersigned by Oxford. The term of this Agreement shall be automatically renewed from year-to-year thereafter. This Agreement may be terminated by Oxford or Primary Care Physician at any time, upon 90 days prior written notice to the other party. If the reason for termination is not the expiration of and non-renewal of this Agreement, Primary Care Physician's breach of any provision of this Agreement, there is a determination of fraud by Primary Care Physician, or, in the opinion of the Regional Medical Director, the Primary Care Physician represents and imminent danger to a Member, upon Primary Care Physician's request, Oxford will furnish Primary Care Physician with the reason for termination and a notice of a right to a hearing within 30 days of such request. This Agreement may also be terminated by Oxford effective immediately if any of Primary Care Physician's medical license, board certification or hospital admitting privileges is revoked or restricted. Additionally, either party may terminate this Agreement effective immediately by written notice upon a material default by the other of its duties and obligations hereunder, including without limitation a refusal or other failure by the Primary Care Physician to arrange for the provision of Covered Services to Members in accordance with the applicable policies and procedures of Oxford, which material default continues for 15 days following written notice to the other of such default. Notwithstanding the above, Primary Care Physician may not be terminated or penalized solely because of filing a complaint or appeal as permitted by New Jersey law and regulations.

13. Post-Termination Obligations. Upon termination, by either party, the rights of each party hereunder shall terminate, provided however, that such termination shall not release Primary Care Physician or Oxford of their obligations with respect to: payments accrued to Primary Care Physician prior to termination; Primary Care Physician's agreement to hold Members harmless and to not seek compensation from Members, a Member's family or persons acting on their behalf for Covered Services provided prior to termination. Primary Care Physician further agrees that in the event of Oxford's insolvency or other cessation of operations, completion of treatment of Members then receiving care from Primary Care Physician until continuation of the Members' care can be arranged by Oxford or up to 120 calendar days in cases where it is deemed medically necessary for the Member to continue treatment with Primary Care Physician. In cases of pregnancy, medical necessity is deemed demonstrated and coverage of services by Primary Care Physician shall continue to the postpartum evaluation of Member, up to six weeks after delivery. The determination of medical necessity of a Member's continued treatment with a Primary Care Physician shall be subject to the appeal procedure pursuant to N.J.A.C. 8:38 - 8.5 through 8.7. Primary Care Physician further agrees that in the event of Oxford's insolvency or other cessation of operations, benefits to Members will continue through the period for which premium has been paid, and benefits to Members confined in an inpatient facility on the date of insolvency or other cessation of operations will continue until their discharge. Primary Care Physician agrees that the provisions of this paragraph and the Hold Harmless provisions of Paragraph 3 shall survive the termination of this Agreement regardless of the reason for termination, including insolvency of Oxford, and shall be construed to be for the benefit of Members. Primary

Care Physician also agrees that the aforementioned provisions supersede any oral or written contrary agreement now existing or hereafter entered into between himself/herself and Members or persons acting on their behalf insofar as such contrary agreement relates to liability for payment for, or continuation of Covered Services provided under the terms and conditions of this Agreement.

14. <u>Defined Terms</u>. The term "Oxford" as used herein shall mean Oxford Health Plans (NJ), Inc. or any affiliate or subsidiary of Oxford Health Plans, Inc., including but not limited to Oxford Health Insurance Inc., which offers, administers or provides health services. The term "Member" shall mean any individual who has entered into, or for whom an employer or other entity has entered into on his/her behalf, a contractual relationship with Oxford to receive "Covered Services." "Covered Services" shall mean health care services and supplies within the scope of a Member's plan of benefits, subject, in some cases, to precertification and other medical management protocols. "Approved Charges" are the amounts due to Primary Care Physician from Oxford for the provision of covered Services which have been delivered in compliance with all required precertifications and medical management protocols.

15. <u>Non-Exclusivity</u>. This Agreement with Primary Care Physician is non-exclusive for either party, and does not in any way restrict Primary Care Physician from entering into agreements with other health care organizations.

16. <u>Advance Directives</u>. Primary Care Physician understands and agrees that Members have the right to accept or refuse treatment and execute advance directives. Primary Care Physician shall (i) document in Member's medical record whether or not the Member has executed an advance directive and, if so, keep a copy of the directive; and (ii) not condition the provision of care or otherwise discriminate against Member based on whether or not Member has executed an advance directive.

17. <u>Primary Care Physician Licensure</u>. Under no circumstances shall this Agreement impose obligations or responsibilities upon Primary Care Physician which require Primary Care Physician to violate the statutes or regulations governing licensure of Primary Care Physician if Primary Care Physician is to comply with the terms of this Agreement.

18. <u>Communication with Members</u>. Oxford encourages Primary Care Physician to freely communicate with Members regarding appropriate treatment alternatives, regardless of benefit limitations; Oxford shall not penalize Primary Care Physician for discussing medically necessary or appropriate care with Members or for being an advocate for medical care on behalf of a Member.

19. <u>Confidentiality</u>. Primary Care Physician shall maintain such records (medical and non-medical) and provide such medical, financial and administrative information to Oxford as may be necessary for compliance by Oxford with state and federal law, as well

as for Oxford's administrative purposes. Oxford and Primary Care Physician agree that medical records of Members shall be treated as confidential so as to comply with all federal and state laws and regulations, provided, however, that Primary Care Physician agrees that he/she shall provide access to all medical records of Members to appropriate personnel of the Departments of Health and Senior Services and/or Banking and Insurance in compliance with all applicable statutes and regulations.

20.   <u>Complaint and Grievance Procedure</u>. Any complaint or grievance that Primary Care Physician may have arising under this Agreement, except concerning any action taken under Paragraph 7 hereof, shall be filed in writing with Oxford's Medical Delivery Department. The Medical Delivery Department shall attempt to resolve the complaint or grievance and shall provide the Primary Care Physician with a written decision within 30 days of its receipt of the complaint or grievance. Primary Care Physician shall have 15 days from receipt of the Medical Delivery Department's written decision to file a written appeal with Oxford's Regional Medical Director. The Regional Medical Director shall respond in writing to the appeal within 30 days of its receipt. Any complaint or grievance which at the completion of this process is not fully resolved to Primary Care Physician's satisfaction, may be submitted to arbitration pursuant to Paragraph 11 hereof.

# OXFORD HEALTH PLANS (NJ), INC.

## ATTACHMENT A-1

### COMMERCIAL/FREEDOM NETWORK

<u>Oxford Members</u>:  Under the terms of this Agreement, Primary Care Physician agrees to render service to Oxford Members covered under Oxford's commercial/Freedom Network.  The rates applicable to said Oxford Members are shown below.

Primary Care Physician will be reimbursed in accordance with the rates shown in the previous agreement with Oxford.

<u>Billing Requirements</u>

All claims must clearly indicate Current Procedural Terminology (CPT) codes, as defined by the American Medical Association (AMA), for all services provided.  Claims not conforming to these guidelines will be denied.

# OXFORD HEALTH PLANS (NJ), INC.

## ATTACHMENT A-2

## COMMERCIAL/LIBERTY NETWORK

<u>Oxford Members</u>:  Under the terms of this Agreement, Primary Care Physician agrees to render service to Oxford Members covered under Oxford's commercial/Liberty Network.  The rates applicable to said Oxford Members shall be shown below.

Primary Care Physician will be reimbursed in accordance with the rates shown in the previous agreement with Oxford.

## <u>Billing Requirements</u>

All claims must clearly indicate Current Procedural Terminology (CPT) codes, as defined by the American Medical Association (AMA), for all services provided.  Claims not conforming to these guidelines will be denied.

## OXFORD HEALTH PLANS (NJ), INC.

## ATTACHMENT A-3

## MEDICARE

grees to render
rk.   The rates

)xford Medicare Members:  Under the terms of this Agreement, Primary Care Physician
grees to render services to Oxford Members covered under Oxford's Medicare risk
rogram.  The rates applicable to Medicare risk program Members are shown below.

n the

XX% of the participating regional Medicare fee schedule

illing Requirements

defined by the
:onforming to

ll claims must clearly indicate Current Procedural Terminology (CPT) codes, as defined
/ the American Medical Association (AMA), for all services provided.  Claims not
.nforming to these guidelines will be denied.

# OXFORD HEALTH PLANS (NJ), INC.

## ATTACHMENT A-4

### MEDICAID

<u>Oxford Medicaid Members:</u>  Under this Agreement, Primary Care Physician agrees to render service to Oxford Members covered under Oxford's Medicaid plans.  The rates applicable to said Oxford Medicaid Members are shown below.

Primary Care Physician will be reimbursed in accordance with the rates shown in the previous agreement with Oxford.

<u>Billing Requirements</u>  -

All claims must clearly indicate Current Procedural Terminology (CPT) codes, as defined by the American Medical Association (AMA), for all services provided.  Claims not conforming to these guidelines will be denied.

# Exhibit C

AMERICAN ARBITRATION ASSOCIATION
-------------------------------------
John Ivan Sutter, M.D.,
on behalf of himself and
all others similarly situated,
                    Claimant,

                                        Case No.
                                        18 193 20593 02

v.

Oxford Health Plans, Inc.,
                    Respondent.
-------------------------------------

Procedural Order No. 19

July 20, 2010

     This order determines whether the claims of the Class

in this case include the principal amount of delayed clean

claims on the ground that Oxford has "waived" the right to

contest them. I find that such claims are not part of the

claims that can be asserted in this arbitration.

     Oxford argues convincingly that the waiver rule of the

New Jersey Department of Insurance and Banking ("DOBI") was

never intended to permit a party submitting a claim to

assert that the carrier has waived a legitimate reason for

nonpayment long after the service was provided. The recent

elimination of the provision by DOBI pursuant to the HCAPPA

statute does not mean that DOBI in its comments said that

the waiver rule, when it was in effect, meant what the

Class contends that it means. It appears to have applied

                        1

only to clean claims. Tellingly, the Class cannot provide an example of a provider being paid the principal amount of a delayed claim on the ground that the carrier had waived all defects.

The discovery issues still open are to be adjusted accordingly.

By August 1, 2010, the parties are directed to provide an updated schedule based on that provided by Oxford on April 27, 2010.

/s/ WLD Barrett, Arbitrator